EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Ana del Carmen Pujol Betancourt | |
|---|---|
| Recurrida | Certiorari |
| v. | 2003 TSPR 156 |
| Jorge Gordón Menendez | 160 DPR _____ |
| Peticionario | |

Número del Caso: CC-2001-380

Fecha: 3 de noviembre de 2003

Tribunal de Circuito de Apelaciones:
                Circuito Regional II

Juez Ponente:
                Hon. Héctor Urgell Cuebas

Abogados de la Parte Peticionaria:
                Lcdo. Eduardo R. Estades Rodríguez
                Lcda. Rosa I. Ward Cid

Abogado de la Parte Recurrida:
                Lcda. Luz De Borinquen Dávila

Materia: Acción Civil

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ana del Carmen Pujol
Betancourt

     Recurrida

        v.                         CC-2001-380

Jorge Gordon Menéndez

     Peticionario

Opinión del Tribunal emitida por la Jueza Asociada señora NAVEIRA DE RODÓN

San Juan, Puerto Rico a 3 de noviembre de 2003

     Nos corresponde revisar una sentencia emitida por el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) en la que determinó que unos honorarios de abogado provenientes de un contrato de servicios profesionales suscrito durante la vigencia del matrimonio, pero percibidos luego de decretado el divorcio, son gananciales en aquella porción correspondiente al tiempo y esfuerzo invertidos en la representación legal durante la vigencia del matrimonio.

2

I

La Sra. Ana del Carmen Pujol Betancourt contrajo matrimonio con el Sr. Jorge Gordon Menéndez el 8 de octubre de 1978 bajo el régimen de sociedad legal de gananciales. Durante el matrimonio el señor Gordon Menéndez cursó estudios en Derecho y obtuvo el grado de *Juris Doctor* el 6 de junio de 1991. El 18 de marzo de 1994 fue admitido al ejercicio de la profesión. Posteriormente, el licenciado Gordon Menéndez asumió la representación legal de unos menores de edad, junto al licenciado Hey Mestre, en el caso *Ángel M. Torres Rodríguez y otros v. Municipio de Toa Alta*, DDP-93-0997. Para la referida representación legal se pactaron honorarios contingentes al resultado del litigio.

El matrimonio entre la señora Pujol Betancourt y el licenciado Gordon Menéndez quedó disuelto mediante sentencia de divorcio emitida el 19 de julio de 1994 y archivada en autos el 29 de agosto del mismo año. Ésta advino final y firme el 28 de septiembre de 1994. Luego del divorcio el licenciado Gordon Menéndez continuó prestando sus servicios profesionales en el mencionado litigio. El 30 de mayo de 1995, ocho (8) meses luego de que la sentencia de divorcio adviniera final y firme, las partes transigieron la demanda por daños y perjuicios. En la estipulación se pactó que los licenciados Gordon Menéndez y Hey Mestre recibirían la suma de $48,620.00,

respectivamente, por honorarios de abogado, para un total de $97,240.00.

La señora Pujol Betancourt presentó una demanda de liquidación de la sociedad legal de gananciales el 11 de enero de 1999.  Alegó que el único activo conocido de la sociedad era un inmueble sito en la Calle 23, W-1218 de la Urbanización Alturas de Río Grande.  Sin embargo, del descubrimiento de prueba surgió que el licenciado Gordon Menéndez invirtió la suma de $60,000.00 en la compra de un inmueble el 2 de mayo de 1996, es decir, dieciocho (18) meses luego de que la sentencia de divorcio adviniera final y firme.  El tribunal de instancia ordenó al licenciado Gordon Menéndez presentar evidencia sobre la procedencia del dinero para la adquisición del inmueble.  Éste indicó que el dinero provino de los honorarios devengados en el litigio *Ángel M. Torres Rodríguez y otros v. Municipio de Toa Alta*.  Debido a que el contrato de servicios profesionales relacionado con la mencionada representación fue suscrito durante la vigencia del matrimonio, la señora Pujol Betancourt reclamó la suma de $48,620.00 como un bien ganancial.

El 10 de noviembre de 2000 el foro de instancia emitió una Resolución en la que determinó que los honorarios devengados por el licenciado Gordon Menéndez pertenecían a la sociedad legal de gananciales.  De este dictamen recurrió el licenciado Gordon Menéndez ante el Tribunal de Circuito.  Adujo que los honorarios eran

privativos por haber sido percibidos después de decretado el divorcio. Mediante sentencia emitida el 30 de marzo de 2001 el foro apelativo revocó al tribunal de instancia. A la luz del principio de *quantum meruit*, resolvió que los honorarios debían prorratearse entre la sociedad legal de gananciales y el licenciado Gordon Menéndez en su carácter privativo en consideración al tiempo y esfuerzo que éste le dedicó al pleito durante la vigencia del matrimonio. El Tribunal de Circuito ordenó al foro de instancia la celebración de una vista evidenciaria para establecer las cuantías correspondientes a cada uno.

Inconforme, el licenciado Gordon Menéndez acudió ante nos mediante recurso de *certiorari* aduciendo que:

> Erró el Tribunal de Circuito de Apelaciones en [sic] no aplicar la doctrina del Tribunal Supremo de Puerto Rico de *Díaz v. Alcalá*, 140 D.P.R. 959 (1996).

> Erró el Tribunal de [Circuito de Apelaciones] al aplicar la Regla del Quantum Merit [sic] obviando así la doctrina de *Díaz v. Alcalá*, 140 D.P.R. 959 (1996).

El 8 de junio de 2001 expedimos el auto solicitado. Ambas partes han comparecido y con el beneficio de sus argumentos, resolvemos.

## II

### A. La sociedad legal de gananciales

Discutiremos conjuntamente los señalamientos de error por estar interrelacionados. En síntesis, debemos

determinar la naturaleza privativa o ganancial de los honorarios de abogado percibidos por el licenciado Gordon Menéndez.

La sociedad legal de gananciales es el régimen económico matrimonial establecido por nuestro Código Civil de forma supletoria en ausencia de capitulaciones matrimoniales o cuando éstas son insuficientes. Art. 1267 del Código Civil, 31 L.P.R.A. sec. 3551. La sociedad de gananciales comienza el día de la celebración del matrimonio y concluye con la disolución de éste, ya sea por muerte, nulidad o divorcio. Arts. 1296 y 1315 del Código Civil, 31 L.P.R.A. secs. 3622 y 3681. El Art. 1295, 31 L.P.R.A. sec. 3621, dispone las repercusiones económicas del régimen al indicar que "el marido y la mujer harán suyos por mitad, al disolverse el matrimonio, las ganancias o beneficios obtenidos indistintamente por cualquiera de los cónyuges durante el mismo matrimonio".

Explica Diez-Picazo que se trata de un sistema donde el beneficio o ganancia se convierte en común, aunque no se atribuye a cada cónyuge sino hasta la disolución del matrimonio. La sociedad legal de gananciales "parte del presupuesto de que aquella ganancia o beneficio es de ambos porque aun cuando un cónyuge haya tenido una intervención decisiva en la adquisición, ...**la contabilización como ganancia es obra del ahorro y sacrificio también del otro**". Luis Diez-Picazo y Antonio Gullón, *Sistema de Derecho civil*, Vol. IV, Tecnos, 7ma

ed., 1997, pág. 175. (Énfasis suplido.) La idea del legislador es de un patrimonio común compuesto por los ingresos que genera la habilidad o trabajo de cada cónyuge y por los frutos y rentas de los bienes de ambos. José Luis LaCruz Berdejo, *Derecho de familia*, Bosch, 1966, pág. 194.[1]

Anteriormente hemos mencionado que son varias las características de la sociedad de gananciales, a saber que: (a) como regla general, se forma por el hecho del matrimonio, aunque puede constituirse expresamente en capitulaciones; (b) sólo puede establecerse entre marido y mujer; (c) comienza y finaliza únicamente cuando se da alguna de las circunstancias contempladas en la legislación; (d) una vez celebrado el matrimonio, los contrayentes no pueden modificar el régimen económico; (e) los cónyuges pueden renunciar a su participación conforme a las restricciones dispuestas en la ley; y (f) los bienes gananciales se dividen por mitad, indistintamente del monto de las aportaciones de cada cónyuge y aunque alguno de ellos nada haya aportado al caudal común. *International Charter Mortgage Corp. v. Registrador*, 110 D.P.R. 862, 865-866 (1981).

Contraído el matrimonio bajo el régimen de la sociedad de gananciales se entiende que la gestión

---

[1]    Véase además Migdalia Fraticelli Torres, *Un nuevo acercamiento a los regímenes económicos en el matrimonio: La sociedad legal de gananciales en el Derecho Puertorriqueño*, 29 Rev. Jur. U.I.P.R. 259, 413 (1995).

económica de cada cónyuge se hace para beneficio de la sociedad y no para beneficio individual. Raúl Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, Vol. I, Universidad Interamericana de Puerto Rico, 1997, pág. 338. No obstante, **el régimen de gananciales prevaleciente en nuestro ordenamiento reconoce, como axioma principal**, **el patrimonio individual de los cónyuges separado del de la sociedad**. *García v. Montero Saldaña*, 107 D.P.R. 319, 335 (1978).

Una vez disuelto el matrimonio, concluye la sociedad de gananciales. Desde entonces nace una comunidad de bienes de la cual los ex cónyuges son copartícipes hasta que se lleve a cabo la liquidación de tales bienes. *Asoc. Residentes Urb. Sagrado Corazón, Inc. v. Juan A. Arsuaga Álvarez*, res. el 24 de septiembre de 2003, 160 D.P.R. \_\_\_\_\_ (2003), 2003 T.S.P.R. 141, 2003 J.T.S. \_\_\_\_\_; *Soto López v. Colón Méndez*, 143 D.P.R. 282, 281 (1997); *Bidot Almodóvar v. Urbino Valle*, res. el 13 de diciembre de 2002, 158 D.P.R. \_\_\_\_\_ (2002), 2002 T.S.P.R. 151, 2002 J.T.S. 157. La nueva comunidad, cuya administración se supone esté a cargo de ambos ex cónyuges, se rige por las normas aplicables a la copropiedad que, en ausencia de pacto expreso, está gobernada por las disposiciones de los Arts. 326 al 340 del Código Civil, 31 L.P.R.A. secs. 1271-1285; *Calvo Mangas v. Aragonés Jiménez*, 115 D.P.R. 219, 228 (1984). A la disolución del matrimonio los cónyuges harán suyos

por mitad las ganancias o beneficios obtenidos por cualquiera de ellos durante el matrimonio. Art. 1295 del Código Civil, *supra*. De acuerdo con Scaevola, es la:

> unión, de cuerpos y almas, la distribución en los quehaceres diarios de la familia, el trabajo de un cónyuge y el espíritu de ahorro y buena administración del otro, lo que justifica, ciertamente, la participación de ambos, precisamente por igual, en la distribución de lo que, atendidas las cargas a cuya satisfacción el patrimonio se preordena, pueda resultar partible. Quintus Mucius Scaevola, *Código Civil*, Tomo XXII, Reus, 1967, pág. 176.

El Código Civil declara como bienes gananciales: los obtenidos por título oneroso durante el matrimonio a costa del caudal común; **los obtenidos por la industria, sueldo o trabajo de los cónyuges; y los frutos, rentas o intereses percibidos o devengados durante el matrimonio** procedentes de bienes comunes o de bienes privativos. Art. 1301 del Código Civil, 31 L.P.R.A. sec. 3641. De otra parte, el Art. 1307, 31 L.P.R.A. sec. 3647, establece una presunción de ganancialidad aplicable a todos los bienes del matrimonio, mientras no se demuestre que pertenecen privativamente al marido o a la mujer. Ésta es una presunción controvertible que persigue resolver las controversias que frecuentemente se suscitan sobre la naturaleza de los bienes. *Espéndez v. Vda. de Espéndez*, 85 D.P.R. 437, 441-442 (1962). El peso de la prueba recae sobre quien sostiene la naturaleza privativa del bien. *Echevarría Jiménez v. Scn. Pérez Meri*, 123

D.P.R. 664, 681 (1989). A tenor de nuestros pronunciamientos en *García v. Montero Saldaña*, *supra*, pág. 335, el rigor de la prueba a los fines de satisfacer la conciencia del juzgador es menor cuando se trata de una reclamación entre los ex cónyuges o entre los herederos de uno y el cónyuge supérstite que cuando se litigan derechos frente a terceros.

En el caso de autos es incontrovertible el hecho que la señora Pujol Betancourt y el licenciado Gordon Menéndez contrajeron matrimonio bajo el régimen de la sociedad legal de gananciales y que el vínculo matrimonial quedó disuelto por sentencia de divorcio emitida el 19 de julio de 1994 y archivada en autos el 29 de agosto del mismo año. Presentada una demanda de liquidación de la sociedad de gananciales por la señora Pujol Betancourt, surgió una controversia sobre el carácter privativo o ganancial de unos honorarios de abogado devengados por el licenciado Gordon Menéndez en virtud de un contrato de servicios profesionales suscrito durante la vigencia del matrimonio. El licenciado Gordon Menéndez prestó sus servicios durante el matrimonio y luego de decretado el divorcio. Sin embargo, percibió tales honorarios luego de que el matrimonio quedara disuelto. Nos corresponde, pues, evaluar el carácter de los honorarios a la luz de los preceptos generales recién esbozados y de la doctrina aplicable a los hechos particulares ante nos.

**B.    El producto del trabajo o industria de los cónyuges**

Como previamente expusimos, se reputan gananciales los bienes obtenidos por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos y los frutos, rentas o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los privativos.  Art. 1301 del Código Civil, *supra*.[2]  Dentro del concepto sueldo, industria o trabajo quedan incluidos los salarios devengados periódicamente por trabajos de mayor o menor importancia; el sueldo u honorarios producto del ejercicio de una profesión; el producto de una empresa, comercio, trabajo científico, artístico, agrícola o literario de los cónyuges.  Serrano Geyls, *supra*, pág. 362; José María Manresa y Navarro, *Código Civil español*, Tomo IX, Reus, 6ta ed., 1969, pág. 680; LaCruz Berdejo, *supra*, págs. 199-200.

En síntesis, se consideran gananciales "todas las formas de retribuir la actividad productora de cualquiera de los cónyuges".  *Carrero Quiles v. Santiago Feliciano*, 133 D.P.R. 727, 731-732 (1993); *García v. Montero Saldaña*, *supra*, pág. 330; Scaevola, *supra*, pág. 379.  En *Díaz v. Alcalá*, 140 D.P.R. 959, 976 (1996), resolvimos que un título profesional obtenido durante el matrimonio es un bien personalísimo del cónyuge recipiente.  Ahora

_____

[2]   Véase Francisco Fortuny Comaposada, *Régimen de bienes en el matrimonio*, Colección Nereo, 1962, págs. 255-262.

bien, puntualizamos que los ingresos generados por la práctica de dicha profesión y los bienes y beneficios adquiridos con dinero ganancial corresponden a la sociedad legal de gananciales.

Las remuneraciones producto del trabajo o industria de los cónyuges también pueden considerarse como frutos, los cuales se reputan gananciales. Como bien señalan los profesores Lagomarsino y Salerno, dentro de los frutos o ganancias están comprendidos "los salarios, los honorarios, las comisiones y todo tipo de remuneración por los servicios prestados por cualquiera de los cónyuges, sea en su profesión, oficio o actividad lucrativa, habitua[l] u ocasiona[l]". Carlos A.R. Lagomarsino y Marcelo U. Salerno, *Enciclopedia de Derecho de familia*, Vol. III, Editorial Universidad, 1994, pág. 657.

La doctrina ha examinado la eventualidad de que los salarios u honorarios se devenguen[3] durante el matrimonio, pero se perciban[4] luego de decretado el divorcio. **La mayoría postula que lo determinante de la naturaleza privativa o ganancial de los salarios es el momento en el que fueron devengados**. Dentro de la

---

[3]    Entiéndase por *devengar* el "[a]dquirir derecho a alguna percepción o retribución por razón de trabajo, servicio u otro título". Real Academia Española, *Diccionario de la lengua española*, Espasa, 22da ed., 2001, pág. 810.

[4]    La palabra *percibir* es definida como "recibir algo". *Id.*, pág. 1727.

doctrina española, el tratadista Reyes Monterreal, estima que son gananciales tanto los frutos percibidos durante el matrimonio como aquellos que, habiéndose devengado vigente el vínculo matrimonial, se perciben luego de que éste sea disuelto.  Esta solución pretende evitar que algún ingreso quede excluido de la sociedad de gananciales en caso de que uno de los ex cónyuges, con el objetivo de atribuirse privativamente el fruto, retrase su percepción hasta el momento en que la sociedad se haya extinguido.  José María Reyes Monterreal, *El régimen legal de gananciales*, Gráficas Menor, 1962, págs. 158-160.

Por otro lado, para Rams Albesa los bienes pertenecerán a la masa ganancial cuando se generen vigente el matrimonio.  Joaquín J. Rams Albesa, *La sociedad de gananciales*, Tecnos, 1992, pág. 116.  De acuerdo con LaCruz Berdejo, "[l]os sueldos y honorarios ingresan en la comunidad cuando los percibe el cónyuge acreedor, mas acaso desde antes el crédito a ellos relativo es bien común".  José Luis LaCruz Berdejo, *Elementos de Derecho civil*, Vol. IV, José María Bosch Editor, 4ta ed., 1997, pág. 285.  Otro sector de la doctrina, entre el cual se encuentra Scaevola, señala que los bienes adquieren su carácter ganancial conforme a la naturaleza de su adquisición.  Scaevola, *supra*, pág. 193.

La doctrina argentina también ha elaborado sobre la naturaleza ganancial de los honorarios devengados durante

el matrimonio, pero percibidos luego de disuelto el mismo. Ésta coincide con los exponentes españoles a los efectos que lo determinante es el momento en el que los honorarios o salarios son devengados, por lo que debe distinguirse la porción perteneciente a la sociedad de la correspondiente al caudal privativo del cónyuge que generó los ingresos. De acuerdo con el profesor Azpiri, cuando la retribución se devengue durante la vigencia del matrimonio, será ganancial aunque se perciba luego de ser disuelto. Jorge O. Azpiri, *Derecho de familia*, Editorial Hammurabi SRL, 2000, pág. 172.

Finalmente, Lagomarsino y Salerno indican que:

> **Se establece la ganancialidad de los [honorarios y sueldos] teniendo en cuenta el momento en que se devengan.** Cuando se perciban con posterioridad a la disolución, habrá que analizar solamente si el derecho a la retribución nació durante la vigencia de la sociedad conyugal, ya que en ese caso habrá quedado incorporado al patrimonio ganancial el derecho a percibirla, aunque solo fuera oblada con posterioridad a la disolución.... **Puede ocurrir, asimismo, que el trabajo se cumpla en parte durante y en parte después de la vigencia de la sociedad conyugal; en tal caso deberá establecerse proporcionalmente cuál es la parte ganancial y cuál es la propia del cónyuge que realizó el trabajo o actividad.** Lagomarsino y Salerno, *supra*, pág. 658. (Énfasis suplido y citas omitidas.)

Resumiendo, las vertientes doctrinales previamente reseñadas estiman que para adjudicar como gananciales o privativos los honorarios percibidos por uno de los cónyuges, es preciso atender al momento en el que se devengaron. Cuando los honorarios se devenguen durante

el matrimonio, serán gananciales aunque se perciban luego de disuelto el vínculo. Considerando lo anterior, examinemos los hechos de marras.

## III

La señora Pujol Betancourt contrajo matrimonio con el licenciado Gordon Menéndez el 8 de octubre de 1978 bajo el régimen de la sociedad legal de gananciales. En 1994 el licenciado Gordon Menéndez fue admitido al ejercicio de la abogacía. A partir de entonces prestó sus servicios profesionales en un litigio civil en el que se pactaron honorarios contingentes. El vínculo matrimonial quedó disuelto mediante sentencia de divorcio archivada en autos el 29 de agosto de 1994. Luego de decretado el divorcio, el licenciado Gordon Menéndez continuó prestando sus servicios en el referido litigio. Ocho (8) meses luego de que la sentencia de divorcio adviniera final y firme, el 30 de mayo de 1995, el pleito fue transigido. En consecuencia, el licenciado Gordón Menéndez percibió la suma de $48,620.00 por honorarios de abogado.

La señora Pujol Betancourt, en su demanda de liquidación de la sociedad conyugal, reclamó como gananciales los mencionados honorarios por haberse suscrito el contrato de servicios profesionales vigente el matrimonio. Por su parte, el licenciado Gordon Menéndez adujo que los honorarios son privativos por

haberlos percibido luego de emitida la sentencia de divorcio.

En primer lugar, debemos señalar que la controversia de autos no versa sobre la naturaleza de un título profesional, sino de unos honorarios por servicios profesionales. Esta circunstancia hace inaplicable la norma que establecimos en *Díaz v. Alcalá*, *supra*. Como señalamos en la citada decisión, aunque el título profesional es un bien personalísimo, los ingresos producto del trabajo de los cónyuges tienen el carácter de bienes gananciales. En vista de lo anterior, resolvemos que actuó correctamente el foro apelativo intermedio al no aplicar la referida norma.

Aclarado este extremo, es menester indicar que el hecho de que se hayan pactado honorarios contingentes al resultado del pleito no varía el hecho de que tales honorarios, devengados y percibidos, constituyen la remuneración al esfuerzo intelectual y físico del cónyuge que prestó el servicio.[5] Además, mientras uno de los cónyuges aporta su conocimiento y competencia en la representación legal, el otro contribuye indirectamente asumiendo los deberes en el hogar y apoyando moral y

---

[5] Anteriormente hemos señalado que en un contrato de honorarios contingentes el abogado o abogada se hace partícipe del resultado del caso para percibir un por ciento de la cuantía obtenida por su cliente. Este contrato es aceptado siempre que sea beneficioso para el cliente y no sea excesivamente oneroso. *In re: Criado Vázquez*, res. el 29 de octubre de 2001, 155 D.P.R. _____ (2001), 2001 T.S.P.R. 154, 2001 J.T.S. 156; *Méndez v. Morales*, 142 D.P.R. 26, 33-35 (1996).

afectivamente al cónyuge acreedor de tales honorarios. De lo anterior se puede colegir que el hecho de que los honorarios sean contingentes no los excluye de los ingresos producto del trabajo o industria de los cónyuges, reputados en nuestro Código Civil como bienes gananciales. Art. 1301 del Código Civil, *supra*.[6]

Por tratarse de honorarios devengados durante la vigencia del matrimonio y luego de su disolución, entendemos que la solución más prudente y justiciera es adoptar la norma del momento en que los mismos fueron devengados. Cónsono con lo anterior, cuando los honorarios se devenguen y perciban durante el matrimonio, se reputarán gananciales.

En la eventualidad que los honorarios se devenguen en parte durante el matrimonio y en parte luego de su disolución, pero sean percibidos luego de disuelto éste, será necesario determinar la porción devengada durante el matrimonio y la devengada luego la disolución. Aquella parte devengada durante la vigencia del matrimonio, será ganancial y, por ende, habrá que dividirla por mitad entre los ex cónyuges, independientemente del tiempo en el que los honorarios sean percibidos. La porción

---

[6] Una determinación a los efectos que por tratarse de honorarios de abogado contingentes éstos no deben considerarse como ingresos, ya que están sujetos al resultado del pleito, podría prestarse para que un cónyuge opte por requerir el pago de sus servicios profesionales en esta forma con el propósito deliberado de privar al otro de su participación ganancial en la remuneración.

devengada luego de la disolución del vínculo matrimonial, será privativa del cónyuge que haya prestado sus servicios profesionales.[7] A tenor de lo anterior y de la presunción de ganancialidad establecida en el Código Civil, el cónyuge que alegue que los honorarios fueron devengados extinta la sociedad de gananciales, tendrá el peso de la prueba para demostrar su carácter privativo.

**La norma que hoy elaboramos atiende de una manera equitativa las controversias entre ex cónyuges y evita que uno de ellos retrase el pago de sueldos u honorarios hasta una fecha posterior a la extinción del matrimonio para privar al otro de los beneficios resultantes del trabajo mientras perduró la unión. Además, esta solución evita que un ex cónyuge venga obligado a hacer partícipe al otro, indefinidamente, de sus salarios u honorarios con posterioridad a la disolución del vínculo matrimonial.**

Al aplicar los principios anteriores al recurso de autos, debemos resolver, como lo hizo el foro apelativo, que es necesario que el licenciado Gordon Menéndez, por ser el ex cónyuge que alega el carácter privativo de los honorarios, rebata la presunción de ganancialidad de los honorarios demostrando en una vista evidenciaria la proporción de éstos que fue devengada luego de decretado

---

[7] Sobre el particular, indicamos en *Díaz v. Alcalá*, *supra*, pág. 972, que "los ingresos obtenidos por un ex cónyuge, luego de decretado el divorcio por sentencia final y firme, son privativos de ese cónyuge". (Énfasis suplido.)

el divorcio y, por ende, privativa.  A esos fines el foro de instancia deberá evaluar los servicios profesionales prestados por él como si se tratase de honorarios por hora en vista de que es el método apropiado para valorar los servicios rendidos.[8]

En vista de que el análisis del primer error dispone de la totalidad de la controversia y de que la revisión recae sobre la sentencia y no sobre sus fundamentos, en correcta metodología adjudicativa no es necesario expresarnos sobre la aplicación del principio de *quantum meruit* a los hechos del presente caso.  *El Vocero v. Junta de Planificación*, 121 D.P.R. 115, 126 (1988).

Por lo antes expuesto y por fundamentos distintos, confirmamos la sentencia emitida por el Tribunal de Circuito y devolvemos el caso al foro de instancia para que continúen los procedimientos de forma compatible con lo aquí resuelto.

MIRIAM NAVEIRA DE RODÓN
Jueza Asociada

---

[8] Para llevar a cabo dicha evaluación el juzgador deberá estimar el valor de los honorarios recibiendo aquella prueba que no menoscabe el privilegio abogado cliente establecido en las Reglas de Evidencia.  32 L.P.R.A. Ap. IV, R. 25.  En la vista evidenciaria el juzgador deberá tomar en consideración el tiempo invertido en la representación legal durante el matrimonio y luego de su disolución, el tipo de gestiones realizadas, el número de comparecencias al foro judicial y la etapa de los procedimientos en la cual se devengaron los ingresos que alegadamente son privativos.  Recibida y analizada la prueba presentada, tendrá que hacer una distribución razonable entre el valor de los honorarios devengados durante el matrimonio y los devengados luego de éste quedar disuelto.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ana del Carmen Pujol
Betancourt

    Recurrida

      v.                                    CC-2001-380

Jorge Gordon Menéndez

    Peticionario

SENTENCIA

San Juan, Puerto Rico a 3 de noviembre de 2003

      Por los fundamentos expuestos en la Opinión que antecede, se confirma la sentencia emitida por el Tribunal de Circuito de Apelaciones y se devuelve el caso al foro de instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.

      Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

                    Patricia Otón Olivieri
              Secretaria del Tribunal Supremo